[Civ. No. 34714. First Dist., Div. One. Jan. 10, 1975.]

ALTA E. GROSS, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
AMERICAN BAPTIST HOMES et al., Respondents.

**COUNSEL**

Levy, Van Bourg & Hackler, Barry J. Williams and Frank J. Reilly for Petitioner.

Hanna & Brophy and Robert L. McCartney for Respondents.

**OPINION**

**ELKINGTON, J.**—On the application of petitioner Alta E. Gross, we review the legality of an award of the Workmen's Compensation Appeals Board.

The facts are not disputed. Petitioner, 44 years of age, was employed as a trayline worker at a home for the elderly. Among her duties she would customarily lift tubs of ice or trays of milk weighing up to 20 pounds. She was considered a "valuable employee" and a "top dietary aide." She had had no prior back trouble; so far as her back was

concerned she was asymptomatic. A January 18, 1971, medical examination showed "everything normal, including the back"; the examining doctor reported her to be "in excellent health." She was in no way restricted in the duties of her employment, and appeared to have no physical impairment or disability.

On February 1, 1971, petitioner, in the course of her employment, slipped and fell on a wet floor. As a result she developed "pain across the low back." After medical examination and treatment she was able to continue in her employment, but "quite a bit of pain in the low back" persisted. Then on June 3, 1971, while cleaning out a refrigerator at work "her back popped," and the pain increased. As a result of those incidents, and following proceedings before the board, she was given a permanent disability rating of 32 percent. The board however apportioned this rating 16 percent to the industrial injuries, and 16 percent to a medically reported "pre-existing but asymptomatic osteoarthritis and degenerative disc disease of the lumbar spine generalized," a condition of which petitioner had had no knowledge. An award, based only on the 16 percent industrial disability found, was entered by the board. That award is here in dispute.

The issue is whether, on the entire record, the award is sustained by substantial evidence. (See *Le Vesque* v. *Workmen's Comp. App. Bd.,* 1 Cal.3d 627, 637 [83 Cal.Rptr. 208, 463 P.2d 432].) "Substantial evidence" is not synonymous with "any evidence." " 'It must be reasonable in nature, credible, and of solid value; it must actually be "substantial" proof of the essentials which the law requires in a particular case.' " (*People* v. *Bassett,* 69 Cal.2d 122, 138-139 [70 Cal.Rptr. 193, 443 P.2d 777]; *White* v. *State of California,* 21 Cal.App.3d 738, 759 [99 Cal.Rptr. 58].)

The record leaves no doubt that at the time of her two industrial injuries, petitioner had the preexisting "osteoarthritis and degenerative disc disease of the lumbar spine," found by the doctors. The condition had taken many years to develop; with time it could be expected to become progressively worse. It is equally true, as reported by one of the two doctor witnesses, that the "Twist of February of 1971, and later in June of 1971 caused a flare up of symptoms in this back, . . ." And until that "flare up of symptoms," petitioner was able, without restriction or discomfort, to perform all of the duties of her employment.

Respondents first offer Labor Code section 4750 as legal justification for the apportionment ordered by the board. That statute states:

"An employee who is suffering from a previous *permanent disability* or *physical impairment* and sustains permanent injury thereafter shall not receive from the employer compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment. [¶] The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed." (Italics added.)

We observe that the elements of the term *"disability"* as used in the Workmen's Compensation Act are "(1) *actual incapacity to perform the tasks usually encountered in one's employment* and the wage loss resulting therefrom, and (2) physical impairment of the body . . . ." (Italics added; *Allied Compensation Ins. Co.* v. *Industrial Acc. Com.,* 211 Cal.App.2d 821, 831 [27 Cal.Rptr. 918]; and see *State of Cal.* v. *Industrial Acc. Com.,* 135 Cal.App.2d 544, 550 [288 P.2d 31].) Here petitioner suffered from no "actual incapacity to perform the tasks usually encountered in [her] employment," prior to the industrial injuries sustained by her.

We next note the statute's alternative requirement for its operation, i.e., suffering from a "previous . . . physical impairment." " 'Impairment' " as used in the pertinent Labor Code sections " 'is not an unknown condition but one that causes loss of function of the body in whole or in part.' " (*State of California* v. *Ind. Acc. Com.,* 147 Cal.App.2d 818, 823 [306 P.2d 64] [disapproved on unrelated point in *Subsequent Injuries Fund* v. *Industrial Acc. Com.,* 56 Cal.2d 842, 846 [17 Cal.Rptr. 144, 366 P.2d 496], and *Ferguson* v. *Industrial Acc. Com.,* 50 Cal.2d 469, 479 [326 P.2d 145]].) Here again petitioner, before her injuries, suffered from no total or partial "loss of function of the body."

Faced with a problem somewhat akin to ours, the court in *State of Cal.* v. *Industrial Acc. Com., supra,* 135 Cal.App.2d 544, 551, stated: "We can find neither in the original [workmen's compensation] act, nor in its present form, any indication that the Legislature intended that either the term 'disability' or 'impairment' as used therein was not to be limited to *actual manifest and symptomatic disabilities* which antedated an industrial injury." (Italics added.)

It will be seen that Labor Code section 4750 is inapposite.

Labor Code section 4663 is also cited as support for the board's apportioned award. It provides: "In case of aggravation of any disease

existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury."

This statute has received repeated judicial construction. "It is settled that the section must be read in the light of the rule that an employer takes the employee as he finds him at the time of the employment. Accordingly, when a subsequent injury lights up or aggravates a previously existing condition resulting in disability, liability for the full disability without proration is imposed upon the employer, and the appeals board may apportion the disability under the section 'only in those cases in which part of the disability would have resulted, in the absence of the industrial injury, from the "normal progress" ' of the preexisting disease." (*Ballard* v. *Workmen's Comp. App. Bd.,* 3 Cal.3d 832, 837 [92 Cal.Rptr. 1, 478 P.2d 937]; and see authority there cited.)

Here it is patent that petitioner's injuries "lighted up" and "aggravat-ed" a "previously existing condition" which had caused her neither "disability" nor "physical impairment," according to the applicable definitions of those terms.

We look to the record for evidence supporting a theory that one-half of petitioner's post-injury permanent disability of 32 percent would nevertheless "have resulted, in the absence of the industrial injury, from the 'normal progress' of [her] preexisting disease." (See *Ballard* v. *Workmen's Comp. App. Bd., supra,* 3 Cal.3d 832, 837.)

In this inquiry we bear in mind the mandate of Labor Code section 3202 which provides: "The provisions of Division 4 and Division 5 of this code [i.e., the Workmen's Compensation Act, including § 4663] shall be *liberally construed* by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment." (Italics added.)

This statute applies equally to "the courts" and to the Workmen's Compensation Appeals Board. (See *Beaida* v. *Workmen's Comp. App. Bd.,* 263 Cal.App.2d 204, 208-209 [69 Cal.Rptr. 516].) █ "When workmen's compensation statutes are equally susceptible of interpreta-tions which are alternatively beneficial or detrimental to the affected employee, they must be construed favorably to the employee." (*Amborn* v. *Workmen's Comp. Appeals Bd.,* 19 Cal.App.3d 953, 959 [97 Cal.Rptr. 466].) The policy applies to factual as well as statutory construction (see

*Lundberg* v. *Workmen's Comp. App. Bd.,* 69 Cal.2d 436, 439 [71 Cal.Rptr. 684, 445 P.2d 300]), and any reasonable doubt whether a disability is compensable will be resolved in favor of the employee (see *Truck Ins. Exchange* v. *Ind. Acc. Com.,* 27 Cal.2d 813, 816 [167 P.2d 705]). The principle seems frequently overlooked by the board.

The only debatably relevant evidence found is the report of the respondent employer's doctor, as follows: "This patient has a degenerative disease of the low back, with lumbo-sacral disc space narrowing, which has obviously taken many years to develop . . . . I am very surprised that the patient has not had symptoms of the back prior to 1971, as I would certainly think there would have been." The doctor also reported that had he seen her at that time, he would have admonished her to "avoid very heavy lifting, bending and twisting of the back."

The second doctor had reported, in relevant part: "Although the patient had pathology to her back of severe degree before the first industrial injury of 2-1-71 the patient was doing her full work load and therefore had no back disability prior to 2-1-71. Therefore no apportionment should be made in this case as the symptoms to her back and her back problems began after the first industrial injury of 2-1-71."

From the evidence before the board it would seem probable, had petitioner's successive industrial accidents not occurred, that at some future time her unknown, dormant, nondisabling and asymptomatic lower back pathology would begin to exhibit objective symptomology in some degree. But there is no evidentiary suggestion that, absent her industrial injuries, petitioner's dormant condition would nevertheless by June 3, 1971 (the day of her second accident), or even at the time of the board hearing, have developed into a 16 percent permanent disability, or any disability.

The Workmen's Compensation Act nowhere permits apportionment, against an existing permanent disability resulting from or at least "lighted up" by an industrial accident, of a disease-caused disability of unknown amount which, but for the accident, would otherwise have occurred at some indefinite future time.

Under the rules we have stated, on the entire record no substantial evidence is found that at or before the time of the board's hearing, petitioner's lower back pathology independently of her industrial injuries had caused a 16 percent or any permanent disability.

Instead, the record conclusively establishes that petitioner's accidents lighted up or aggravated "a previously existing condition resulting in disability." In such circumstances, as stated by *Ballard* v. *Workmen's Comp. App. Bd., supra,* 3 Cal.3d 832, 837, "liability for the full disability *without proration* is imposed upon the employer, . . ." (Italics added.)

We have considered the early case of *Tanenbaum* v. *Industrial Acc. Com.,* 4 Cal.2d 615 [52 P.2d 215], heavily relied upon by respondents. That case, initially, seems to lend aid to respondents' position. But we note the court's comment (p. 618) that, *at the time of his industrial accident,* Tanenbaum was suffering from "what may be termed a nonindustrial *disability* resulting from the normal progress of the preexisting arthritis." (Italics added.) Apportionment, to the extent of that preexisting *disability,* was accordingly approved. In the case at bench, at the time of her industrial injuries, petitioner was suffering from no preexisting "disability" as that term is defined. (See *Allied Compensation Ins. Co.* v. *Industrial Acc. Com., supra,* 211 Cal.App.2d 821, 831; *State of Cal.* v. *Industrial Acc. Com., supra,* 135 Cal.App.2d 544, 550.)

A vigorously pursued argument of respondents takes the following form: "The uncontradicted medical evidence in this case shows that Petitioner had a pre-existing degenerative condition in her spine. The restrictions that Dr. Powlan would have placed on Petitioner's activities prior to the first alleged industrial injury are prophylactic in nature in that they are intended to avoid injury to an already vulnerable spine. In *Luchini vs. WCAB* (7 C.A. 3d 141), the Court held that a prophylactic work restriction was a ratable factor of disability. The Court has in other cases refused apportionment where it is not clearly shown that there was a pre-existing *disability. We do not contend that mere pathology is a sufficient basis for apportionment. We do contend, however, that pre-existing disability must be apportioned and that a prophylactic restriction is a disability* under the holding in *Luchini.*" (Italics added.)

It is of course true, as held in *Luchini* v. *Workmen's Comp. App. Bd.,* 7 Cal.App.3d 141 [86 Cal.Rptr. 453], that a prophylactic restriction, i.e., a work restriction reasonably necessary to prevent further harm, is a ratable factor of one's permanent disability. But that is not to say that such a prophylactic restriction is to be applied retroactively, thus creating a sort of factual or legal fiction of an otherwise nonexistent previous disability or physical impairment. Application of such a rule would not only be unreasonable, but flatly contrary to the principle reiterated in *Ballard* v. *Workmen's Comp. App. Bd., supra,* 3 Cal.3d 832, 837. We

reached a similar conclusion in *Amico* v. *Workmen's Comp. Appeals Bd.,* 43 Cal.App.3d 592, 606 [117 Cal.Rptr. 831].

For the reasons stated, the board's apportionment of 50 percent of petitioner's permanent disability to her preexisting lower back pathology is unsupported by substantial evidence.

The award is annulled. The Workmen's Compensation Appeals Board will enter a new and different award in a manner not inconsistent with the views we have here expressed.

Molinari, P. J., and Sims, J., concurred.